## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANET HARVEY and JOSEPH HARVEY,<br><br>             Plaintiffs,<br><br>v.<br><br>PERMANENT MISSION OF THE REPUBLIC OF SIERRA LEONE TO THE UNITED NATIONS, EMPIRE GROUP NYC, LLC, DAVID I. MONTESI, FAIRFIELD CONSTRUCTION ASSOCIATES, LLC, and JULES DAVIS,<br><br>             Defendants. | Case No. 1:21-CV-04368 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS JANET HARVEY AND JOSEPH HARVEY'S MOTION FOR (1) CONTEMPT AND SANCTIONS AGAINST DEFENDANTS EMPIRE GROUP NYC, LLC AND DAVID I. MONTESI; AND (2) A PRELIMINARY INJUNCTION AGAINST ALL DEFENDANTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 4

I.      BACKGROUND ................................................................................................... 4

II.      THE ORDER ......................................................................................................... 5

III.      ADDITIONAL DANGERS AT PLAINTIFFS' HOME ...................................... 5

APPLICABLE LAW .................................................................................................................... 7

I.      CONTEMPT ......................................................................................................... 7

II.      SANCTIONS ......................................................................................................... 8

III.      PRELIMINARY INJUNCTION ......................................................................... 8

ARGUMENT ................................................................................................................................ 9

I.      THE COURT SHOULD HOLD THE EMPIRE DEFENDANTS IN
CONTEMPT FOR THEIR FAILURE TO COMPLY WITH THE ORDER .................... 9

     A.      The Order with Which the Empire Defendants Failed to Comply is
Clear and Unambiguous ......................................................................... 9

     B.      Proof of the Empire Defendants' Noncompliance with the Order is
Clear and Convincing ............................................................................. 9

     C.      The Empire Defendants Have Not Diligently Attempted to Comply
with the Order in a Reasonable Manner ............................................... 10

II.      THE COURT SHOULD SANCTION THE EMPIRE DEFENDANTS .......................... 10

III.      PLAINTIFFS REQUEST A PRELIMINARY INJUNCTION AGAINST
ALL DEFENDANTS ...................................................................................................... 12

     A.      This Court Has Subject Matter Jurisdiction over the Mission ............... 12

         1.      The "Commercial Activity Exception" Under 28 U.S.C. §
1605(a)(2) Applies Here ......................................................... 13

         2.      The "Immovable Property" Exception Under 28 U.S.C. §
1605(a)(4) Also Applies ......................................................... 15

i

3.     The "Tortious Act" Exception Under 28 U.S.C. § 1605(a)(5) Likewise Applies ....................................................17

4.     The Doctrine of Inviolability Does Not Apply Here ................................18

B.     Plaintiffs Can Satisfy Every Element for a Preliminary Injunction against the Fairfield Defendants ....................................................20

    1.     Plaintiffs Will Likely Succeed on the Merits of their Claims against the Fairfield Defendants ....................................20

    2.     The Balance of Equities Heavily Favor Plaintiffs in their Claims against the Fairfield Defendants ...................................21

    3.     Issuing an Injunction against the Fairfield Defendants Serves the Public Interest ........................................21

C.     Plaintiffs Renew their Request for a Preliminary Injunction against the Mission and Empire Defendants .....................................21

D.     Plaintiffs Will Suffer Irreparable Harm without an Injunction against All Defendants ....................................................22

CONCLUSION ....................................................................23

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*211-12 N. Blvd. Corp. v. LIC Contracting, Inc.*,
   186 A.D. 3d 69, 128 N.Y.S.3d 551 (2020) ..........................................................................20

*767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to United
   Nations*,
   988 F.2d 295 (2d Cir. 1993)................................................................................................19

*A.H. by and through Hester v. French*,
   985 F.3d 165 (2d. Cir. 2021)..............................................................................................21

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989)...........................................................................................................12

*Broker Genius Inc. v. Seat Scouts LLC*,
   17-Cv-8627 (SHS), 2019 WL 2462333 (S.D.N.Y. June 13, 2019) .........................................11

*Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*,
   777 F. Supp. 2d 424 (E.D.N.Y. 2011) ...............................................................................22

*Cangemi v. Yeager*,
   185 A.D.3d 1397 (2020) ....................................................................................................20

*Carpenter Tech. Corp. v. City of Bridgeport*,
   180 F.3d 93 (2d Cir. 1999).................................................................................................22

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
   814 F.3d 91 (2d Cir. 2016).................................................................................................11

*City of New York v. Permanent Mission of India to United Nations*,
   376 F. Supp. 2d 429 (S.D.N.Y. 2005).................................................................................18

*City of New York v. Permanent Mission of India to the United Nations*,
   446 F.3d 365 (2d Cir. 2006)...............................................................................................15

*City of New York v. Venkataram*,
   No. 06 Civ. 6578(NRB), 2012 WL 2921876 (S.D.N.Y. July 18, 2012)..................................8

*Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for A.W.
   Galadari et al.*,
   12 F.3d 317 (2d Cir. 1993).................................................................................................12

*Drywall Tapers & Pointers v. Local 530*,
   889 F.2d 389 (2d Cir. 1989).................................................................................................9

*Fed. Trade Comm'n v. Rensin*,
   687 Fed. App'x 3 (2d Cir. 2017)...........................................................................11

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007)......................................................................................8

*Hartford Courant Co., LLC v. Carroll*,
   986 F 3d. 211 (2d Cir. 2021)..............................................................................9, 21

*Huebner v. Midland Credit Mgmt., Inc.*,
   897 F.3d 42 (2d Cir. 2018)....................................................................................10

*Jones v. Park Front Apartments, LLC*,
   73 A.D.3d 612, 901 N.Y.S.2d 46 (2020) ...............................................................22

*King v. Allied Vision, Ltd.*,
   65 F.3d 1051 (2d Cir. 1995)...........................................................................7, 8, 10

*L.V.M. v. Lloyd*,
   318 F. Supp. 3d 601 (S.D.N.Y. 2018)....................................................................20

*Napolitano v. Tishman Constr. Corp.*,
   No. 96 CV 4402 (SJ), 1998 WL 102789 (E.D.N.Y. Feb. 26, 1998)..........14, 15, 18

*New York ex rel. Spitzer v. Operation Rescue Nat'l*,
   273 F.3d 184 (2d Cir. 2001)..................................................................................21

*NML Capital, Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012)..................................................................................19

*NYSA-ILA Pension Tr. Fund By & Through Bowers v. Garuda Indonesia*,
   7 F.3d 35 (2d Cir. 1993)........................................................................................13

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004)................................................................................7, 8

*Perfect Fit Indus. v. Acme Quilting Co.*,
   673 F.2d 53 (2d Cir. 1982)......................................................................................8

*Permanent Mission of India to the United Nations v. City of New York*,
   551 U.S. 193 (2007).........................................................................................15, 16

*Powell v. Ward*,
   643 F.2d 924 (2d Cir. 1981)....................................................................................9

*Pulaski v. Republic of India*,
   212 F. Supp. 2d 653 (S.D. Tex. 2002) .........................................................16, 17, 18

*Republic of Argentina v. Weltover,*
    504 U.S. 607 (1992)......................................................................................................12

*S. New England Tel. Co. v. Global NAPs Inc.,*
    624 F.3d 123 (2d Cir. 2010)............................................................................................7

*Short v. Manhattan Apartments, Inc.,*
    916 F. Supp. 2d 375 (S.D.N.Y. 2012)............................................................................20

*SK Greenwich LLC v. W-D Grp. (2006) LP,*
    No. 10 CIV. 7846 RRP, 2010 WL 4140445 (S.D.N.Y. Oct. 21, 2010)..................................22

*United States. Argentine Republic v. Amerada Hess Shipping Corp.,*
    488 U.S. 428 (1989)......................................................................................................12

*United States Fid. and Guar. Co. v. Braspetro Oil Services, Co.,*
    199 F.3d 94 (2d Cir. 1999) (per curiam).........................................................................13

*USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia,*
    No. 10 Civ. 4262 LTS, 2010 WL 4739945 (S.D.N.Y. Nov. 17, 2010) ................................13

*USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia,*
    681 F.3d 103 (2d Cir. 2012)...........................................................................................17

*Utica Coll. v. Gordon,*
    389 Fed. App'x 71 (2d Cir. 2010)....................................................................................7

**Statutes**

28 U.S.C. § 1603(d) .........................................................................................................13

28 U.S.C. § 1603(e) .........................................................................................................13

28 U.S.C. § 1604 .............................................................................................................12

28 U.S.C. § 1605(a)(2).....................................................................................................13

28 U.S.C. § 1605(a)(4).....................................................................................................15

28 U.S.C. § 1605(a)(5).....................................................................................................17

Building Code Section 3309.1.1 ..........................................................................................7

Building Code Section 3309.8 .............................................................................................6

Building Code Sections 3309.8(3) and (5) .............................................................................6

Mechanical Code Sections 801.1.1.1, 801.1.1.2, and 801.1.1.3 ................................................6, 7

**Legislative History**

H.R. REP. 94-1487, 16, 1976 U.S.C.C.A.N. 6604, 6615 ............................................................14

**Other Authorities**

Vienna Convention on Consular Relations Art. 22 ...................................................................18, 19

Vienna Convention on Consular Relations Art. 55 ......................................................................16

Plaintiffs Janet Harvey and Joseph Harvey (together, "Plaintiffs") respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Contempt and Sanctions against Empire Group NYC, LLC ("Empire") and David I. Montesi ("Montesi" and, together with Empire, "Empire Defendants"), and for a Preliminary Injunction against the Empire Defendants, Fairfield Construction Associates, LLC ("Fairfield"), Jules Davis ("Davis" and, together with Fairfield, "Fairfield Defendants"), and the Permanent Mission for the Republic of Sierra Leone to the United Nations ("Mission" and, together with the Empire Defendants and Fairfield Defendants, "Defendants").

## PRELIMINARY STATEMENT

About seven months after Plaintiffs began this action, they still live in a state of danger and much-reduced quality of life as a result of botched—and now stalled—renovations at the Mission's headquarters, which are next to Plaintiffs' home ("Headquarters"). Efforts to meet and confer have failed; the Empire Defendants are essentially incommunicado[1]; and the Mission has, to date, managed to avoid lifting a finger to fix the abhorrent conditions at its own property. Plaintiffs now seek the Court's assistance in remedying this ongoing and urgent situation, which cannot await the end of this litigation.

Plaintiffs move the Court for (1) an Order holding the Empire Defendants in contempt and requiring them to comply with the Consent Order (ECF No. 38) immediately; (2) an Order sanctioning the Empire Defendants for their repeated and consistent noncompliance with the Consent Order by ordering them to (a) pay a $50 fine per day for every day the Empire Defendants have been in noncompliance with the Consent Order beginning on September 1, 2021, totaling

---

[1] To be clear, undersigned counsel refers to the Empire Defendants themselves; the Empire Defendants' counsel have tried to communicate with Plaintiffs but do not appear to have complete client cooperation.

$5,250.00[2]; (b) disgorge any funds paid to the Empire Defendants from the Mission from September 1, 2021 to present; and (c) pay reasonable attorneys' fees and costs associated with prosecuting this Motion; and (3) a preliminary injunction against all Defendants.

As stated above and detailed in the First Amended Complaint ("FAC"), these requests arise from unlawful renovations at the Mission's headquarters in Manhattan that have continued to place Plaintiffs and the public in severe danger. Despite Plaintiffs' and the New York City Department of Buildings' ("DOB") efforts to intervene, including the DOB's imposition of significant fines that remain overdue and unpaid and several stop work orders, Defendants have refused to comply with the New York City Construction Code ("Construction Code"), the New York City Building Code ("Building Code"), and basic industry standards meant to mitigate such dangers. At this point, it is clear that Defendants have no respect for the Construction Code, the DOB, or Plaintiffs, nor do they have any intention of complying with the DOB's orders. The DOB's imposition of financial penalties has not deterred Defendants either.

As the Court is aware, Empire Defendants previously entered into a Consent Order with Plaintiffs on June 7, 2021 ("Order"). (*See* ECF No. 38.) Plaintiffs agreed to the Order because the Empire Defendants represented that they were willing to fix the life-threatening dangers they created at the Headquarters. But, six months have passed, and significant outstanding items remain. Among other things, the Empire Defendants have failed to install a chimney extension necessary to ensure that Plaintiffs are not poisoned in their own home because of the renovations; failed to provide proof of removal of flammable debris from the construction site; failed to properly enclose an open elevator shaft, which led to Plaintiffs' alarm system detecting carbon monoxide within Plaintiffs' home, requiring the help of the New York City Fire Department ("Fire Department");

---

[2] The Empire Defendants have been in non-compliance with the Order for at least 105 days.

failed to fill any gaps or holes in the Mission's and Plaintiffs' shared wall necessary to secure the structural integrity of Plaintiffs' home; and failed to install proper flashing and weatherproofing to prevent additional water and structural damage to Plaintiffs' home. The Empire Defendants have shown no more respect for this Court and the Order than they did the DOB. The Court should hold the Empire Defendants in contempt, require immediate compliance with the Order, and issue sanctions for this egregious misconduct.

The Mission's conduct—or lack thereof—has been equally egregious. The Mission has taken no affirmative steps at all to fix any of the problems on its own property, taking the extraordinary position that their only responsibility is not to *impede* execution of the Order—even when the Mission is perfectly aware that key provisions of the Order remain incomplete. The Mission's choice to remain passive about dangerous conditions on its own property has no basis in law or fact. It is the Mission's responsibility to solve these problems just as it is the responsibility of the people the Mission hired to complete the renovation: the general contractor (the Fairfield Defendants) and the subcontractor (the Empire Defendants). The Headquarters remains a danger to Plaintiffs; indeed, this Motion details three instances of the botched renovations putting Plaintiffs directly in danger since this litigation began. Plaintiffs thus request that the Court enter preliminary injunction against Defendants and grant them the narrowly tailored relief they request in this Motion.[3]

---

[3] Plaintiffs did not seek permission from the Court to apply for injunctive relief against the Fairfield Defendants, but includes them here in the interest of avoiding duplicative briefing. (Plaintiffs would of course be pleased to submit separate briefing if Your Honor wishes.)

## STATEMENT OF FACTS

### I.    BACKGROUND

Plaintiffs are married and own the residential townhouse located at 243 East 49th Street in Manhattan ("Plaintiff Home"). (FAC ¶ 11; Declaration of Janet Harvey ("Harvey Decl.") ¶ 2, ECF No. 9.) Plaintiffs live there with their daughters. (FAC ¶ 11; ECF No. 9, ¶ 2.) The Mission is the delegation to the United Nations from the Republic of Sierra Leone ("Sierra Leone"). (FAC ¶ 12; ECF No. 9, ¶ 3.) The Mission owns the Headquarters, a townhouse next to the Plaintiff Home. (FAC ¶ 12; ECF No. 9, ¶ 3.) The Plaintiff Home and the Mission share a wall, known as a party wall, which is integral to the structural integrity of both properties ("Party Wall"). (FAC ¶ 2; ECF No. 9, ¶ 3.) Since at least in or about 2019, the Mission has been undertaking a massive renovation of the Headquarters—including the addition of two new top floors. (FAC ¶ 23; Declaration of Matthew Bendix ("Bendix Decl.") ¶ 7, ECF No. 13.) Defendant Empire is performing the renovations; Defendant Montesi is the President of Empire, and the Headquarters' permit holder for the renovations. (FAC ¶ 13; ECF No. 13, ¶ 7.) Upon information and belief, the Fairfield Defendants served as the general contractor for the renovations at issue in this litigation. (FAC ¶¶ 3, 25.)

On September 1, 2021, the Anticorruption Commission of Sierra Leone issued conclusions about a corruption investigation into the renovations at the Mission, which included findings of corruption related to the Fairfield Defendants being awarded the contract; Mr. Davis was subsequently indicted on corruption-related charges. *See* Anti-Corruption Commission of Sierra Leone, *ACC Indicts Saidu Nallo, Head of Chancery, Dr. Samura M.W. Kamara, Former Minister of Foreign Affairs and International Cooperation, and Four Others on Various Corruption Offences Relating to the Reconstruction of the Sierra Leone United Nations Permanent Rep. Chancery Building in New York*, found at https://www.anticorruption.gov.sl/blog/anti-corruption-

commission-sl-news-room-1/post/acc-indicts-saidu-nallo-head-of-chancery-dr-samura-m-w-

kamara-former-minister-of-foreign-affairs-and-international-cooperation-and-four-others-on-

various-corruption-offences-relating-to-the-reconstruction-of-the-sierra-leone-united-nations-

permanent-rep-chancery-building-in-new-york-589 (last visited Dec. 14, 2021).

## II.     THE ORDER

The chart in the declaration submitted by Plaintiffs' engineer shows that many of the

Order's requirements remain outstanding, including those listed above. (*See* Ex. 1, Supplemental

Declaration of Matthew Bendix ("Bendix Suppl. Decl.") ¶ 4.)

## III.    ADDITIONAL DANGERS AT PLAINTIFFS' HOME

As detailed in the FAC, the sworn Declarations of Janet Harvey and Mr. Bendix, and the

Supplemental Declaration of Mr. Bendix, the renovations—which have been going on for years

with no end in sight—remain lethal to Plaintiffs and the public. Matters have only gotten more

urgent since Plaintiffs originally applied for injunctive relief against the Mission. (Bendix Suppl.

Decl. ¶ 5.) During this litigation, a tarp fell over the elevator shaft at the Mission's property,

covering it completely. (*Id.* ¶ 7.) The tarp prevented any type of escape for carbon monoxide; the

level of carbon monoxide that entered Plaintiffs' home triggered their alarm system, which notified

the Fire Department. (*Id.* ¶¶ 8–9.) And, during this litigation, the Empire Defendants placed

plywood over the smoke vent on Plaintiffs' roof, inhibiting the operation of a fire safety system

by preventing a vent from opening necessary to protect fire egress from the building thereby

threatening the life and safety of Plaintiffs. (*Id.* ¶ 10.)  Further, when the thaw from last winter

occurred, Plaintiffs experienced significant water intrusion into their home from Defendants

failing to close gaps and holes in the Party Wall and elevator shaft. (*Id.* ¶ 11.) The same is expected

to be true for this winter and its thaw. (*Id.*)  The Mission has done nothing to fix these problems

or prevent new emergencies this winter, apparently deciding to remain on the sidelines. The

Mission has refused, for instance, to engage new contractors to make the Headquarters safe or to take productive steps toward a resolution, such as permitting an independent third party to confirm that the Mission no longer contains flammable debris.

Good-faith efforts by the DOB to solve these problems have failed. As the Mission is well aware, the Empire Defendants simply ignore the violations piling up against them and refuse to pay significant financial penalties already imposed by the DOB. (*See* FAC ¶¶ 53–54.) The Empire Defendants are unwilling or unable to follow DOB regulations meant to keep neighbors and the public safe, and the Mission is evidently willing to let these dangerous conditions remain. As detailed below, Plaintiffs respectfully renew their request for a preliminary injunction against Defendants, which should be required by this Court to do more than stand by and watch the destruction of the Plaintiff Home:

| Still Existing Harm | Remedy (Requirements for Defendants) |
| --- | --- |
| Continual damage to the Plaintiff Home described here; and | Required to show cause why a preliminary injunction should not issue; and |
| Failing to prevent water from infiltrating the Plaintiff Home by filling gaps in the Party Wall, by applying flashing to the Headquarters, causing an ongoing mold infestation that cannot be abated while the water still flows; and | Install appropriate flashing and refrain from conducting work at the Headquarters that causes more water damage to the Plaintiff Home. |
| Failing to shore up the Party Wall and failing to close the gaps in the Party Wall in violation of Building Code Sections 3309.8(3) and (5) causing continuing water damage to the Plaintiff Home and potential damage to the Party Wall; and | Comply with Building Code Section 3309.8(3) and (5) and fill gaps in the Party Wall within thirty days of the preliminary injunction order ("PI Order"). |
| Inadequately reinforcing the Party Wall by installing a faulty gutter and flashing in violation of Building Code Section 3309.8, causing continuing water damage to the Plaintiff Home, which may cause a vermin infestation; and | Comply with Building Code Sections 3309.8 by (1) properly constructing gutter so water is not directed to the Plaintiff Home; and (2) properly installing flashing at the Headquarters within thirty days of the PI Order. |
| Failing to extend the chimney flues in violation of Mechanical Code Sections 801.1.1.1, | Comply with Mechanical Codes Sections 801.1.1.1, 801.1.1.2, and 801.1.1.3 and extend |

| | |
|---|---|
| 801.1.1.2, and 801.1.1.3, impeding proper draft and discharge potentially causing carbon monoxide buildup into the Plaintiff Home; and | chimney flues on the Plaintiff Home within thirty days of the PI Order. |
| Failing to provide the Plaintiffs with any schedule for completion of the renovations in violation of Building Code Section 3309.1.1. | Provide the required notice to Plaintiffs within five days of the PI Order. |

In addition to these remedies, Plaintiffs request that the Court order an independent monitor be appointed, to be agreed on by both parties and to have costs split among Defendants jointly and severally, to monitor Defendants' compliance with the orders of this Court.

## APPLICABLE LAW

### I.    CONTEMPT

District courts "have the inherent power to find a party in contempt for bad faith conduct violating the court's orders." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010). A court may hold a party in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Utica Coll. v. Gordon*, 389 Fed. App'x 71, 72 (2d Cir. 2010) (internal quotation marks and citation omitted). The moving party need not establish that the opposing party's noncompliance with the court's order was willful. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)).

Courts routinely find parties in contempt when all three elements are satisfied. *See, e.g.*, *Paramedics*, 369 F.3d at 655–656 (affirming district court's finding of civil contempt by distributor when all three elements for civil contempt were met); *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058–1059 (2d Cir. 1995) (same).

## II.    SANCTIONS

On finding that a party is in civil contempt, this Court retains "broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions." *City of New York v. Venkataram*, No. 06 Civ. 6578(NRB), 2012 WL 2921876, at *3 (S.D.N.Y. July 18, 2012) (quoting *E.E.O.C. v. Local 28 of Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001)). Civil contempt sanctions may serve dual purposes: to secure a contemnor's future compliance with court orders and to compensate the party that the contemnor wronged. *Paramedics*, 369 F.3d at 657 (citations omitted).

To the extent that a contempt sanction is coercive, the Court has "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir. 1982). The Court considers several factors in calculating a fine, including "the character and magnitude of the harm threatened by continued contumacy," the "probable effectiveness of any suggested sanction in bringing about [compliance]," and the contemnor's ability to pay. *Id.* (citations omitted). To the extent that the contempt sanction is coercive, the Court has less discretion. *Paramedics*, 369 F.3d at 658. Thus, when the contemnor pays its fine directly to the other party rather than the court, "the sanction should correspond at least to some degree with the amount of damages." *King*, 65 F.3d at 1062.

## III.    PRELIMINARY INJUNCTION

"A district court has wide discretion in determining whether to grant a preliminary injunction." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005)). That said, a preliminary injunction is a drastic remedy that should be granted only when "the movant, by a clear showing, carries the burden of persuasion." *Id.* (quoting *Moore*, 409 F.3d at 510). To obtain a preliminary injunction, a plaintiff must establish that: (1) they are likely to succeed on the merits; (2) they are

likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *See Hartford Courant Co., LLC v. Carroll*, 986 F 3d. 211, 223 (2d Cir. 2021).

## ARGUMENT

## I. THE COURT SHOULD HOLD THE EMPIRE DEFENDANTS IN CONTEMPT FOR THEIR FAILURE TO COMPLY WITH THE ORDER

Plaintiffs can establish all three of the necessary elements for the Court to hold the Empire Defendants in contempt. The Court should do so.

### A. The Order with Which the Empire Defendants Failed to Comply is Clear and Unambiguous

An order is clear and unambiguous enough to warrant a finding of contempt against a violating party if it leaves "no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden." *Drywall Tapers & Pointers v. Local 530*, 889 F.2d 389, 395 (2d Cir. 1989) (citations omitted). Here, since the Empire Defendants helped craft the Order, knowingly and intentionally taking on its obligations, they would be hard pressed to argue that they did not understand what it ordered them to do.

### B. Proof of the Empire Defendants' Noncompliance with the Order is Clear and Convincing

There can be no dispute that the Empire Defendants have substantially failed to comply with the Order. In *Powell v. Ward*, 643 F.2d 924, 932-33 (2d Cir. 1981), the Second Circuit held that the evidence of the defendants' noncompliance with the district court's order was "clear and convincing" when the defendants made no effort to institute the procedures in the district court's order or follow the court's directives for inmate disciplinary proceedings. *Id.* at 932-3.

Like the defendants in *Powell* who made no efforts to institute the procedures the district court had ordered, here the Empire Defendants have made no efforts to complete many of the tasks

the Court ordered. As described by Plaintiffs' engineer, many tasks thus remain incomplete. (*See* Bendix Suppl. Decl. ¶ 4.)

There can be no question that the Empire Defendants' noncompliance with the Order is "clear and convincing."

**C.    The Empire Defendants Have Not Diligently Attempted to Comply with the Order in a Reasonable Manner**

Under the third and final prong, the moving party must establish that the contemnor has not diligently sought to comply with the court's order in a reasonable manner. *King*, 65 F.3d at 1058 (citing *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir. 1989) (holding defendants in contempt when defendants continued to disobey court order by physically blocking access to abortion facility despite ample opportunity to comply with court order).

The same analysis should apply here because, like the defendants in *Terry*, who had ample opportunity to comply with a court order, so too have the Empire Defendants. Thus, the Court should find the Empire Defendants in contempt of the Court's Order and order the Empire Defendants to immediately comply with the Order.

**II.    THE COURT SHOULD SANCTION THE EMPIRE DEFENDANTS**

As a result of the Empire Defendants' clear disregard of the Order, a sanction is appropriate. *See Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) ("The fact that a pretrial order was violated is sufficient to allow some sanction."). Plaintiffs request that the Court sanction the Empire Defendants for their noncompliance by ordering them to (a) pay a $50 fine per day for every day the Empire Defendants have been in noncompliance with the Order beginning on September 1, 2021, totaling $5,250.00; (b) disgorge any funds paid to the Empire Defendants from the Mission from September 1, 2021 to present; and (c) pay reasonable attorneys' fees and costs associated with prosecuting this Motion. The Court has the power and discretion to

issue these civil sanctions. *See CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 102-03 (2d Cir. 2016) (holding district court properly issued daily fine for every day defendant was in noncompliance with court order because sanctions were to coerce defendants into future compliance, and sanctions were issued after repeated violations of injunctions and similar court orders); *Fed. Trade Comm'n v. Rensin*, 687 Fed. App'x 3, 4 (2d Cir. 2017) (upholding civil compensatory damages when defendant had violated consent order and ordered defendants to disgorge funds paid to defendants for monies received for conduct that violated consent order); *Broker Genius Inc. v. Seat Scouts LLC*, 17-Cv-8627 (SHS), 2019 WL 2462333, at *3 (S.D.N.Y. June 13, 2019) (awarding attorneys' fees and costs for sanctions in contempt proceeding because plaintiff should be made whole for harm suffered).[4]

Here, the Court should issue sanctions against the Empire Defendants. The Empire Defendants should be fined for every day they have been in non-compliance. Just as the defendants in *CBS Broadcasting* repeatedly violated orders, the Empire Defendants have continuously disregarded DOB orders, still have not paid fines owed to the DOB, and failed to comply with the Order. Plaintiffs hope that a fine for every day they have been in noncompliance will persuade the Empire Defendants to comply with the Order and the DOB's orders. *CBS Broadcasting*, 814 F.3d at 103. Similarly, requiring the Empire Defendants to disgorge any profits made based on their noncompliant behavior would persuade the Empire Defendants to comply with the Order. *Rensin*, 687 Fed. App'x at 4. And, finally, through no fault of their own, the Plaintiffs have found themselves yet again in danger. They complied with the Order and have worked diligently to get

---

[4] The issue of whether willfulness is needed to issue attorneys' fees as sanctions in a contempt proceeding is still an open question in the Second Circuit. *Broker Genius Inc.*, 2019 WL 2462333, at *3 n.3. Even if willfulness were required, the Empire Defendants willfully disobeyed the Court's Order. This is evident by their disregard for repeated efforts by the DOB (including stop work orders and fines) to bring the renovations at the Mission's property up to Code, and the Empire Defendants have done nothing to protect Plaintiffs' home since July 2021.

the Empire Defendants to comply with the Order to no avail. As a result, Plaintiffs request attorneys' fees and costs associated with prosecuting this Motion.

## III.   PLAINTIFFS REQUEST A PRELIMINARY INJUNCTION AGAINST ALL DEFENDANTS

Plaintiffs are entitled to a preliminary injunction against all Defendants. To begin, the Mission is subject to this relief under one of the exceptions to the Foreign Sovereign Immunities Act ("FSIA"). Second, Plaintiffs can satisfy all the requisite elements for injunctive relief against the Fairfield Defendants. Third, Plaintiffs renew their request for a preliminary injunction against the Mission and Empire Defendants.

### A.   This Court Has Subject Matter Jurisdiction over the Mission

The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover*, 504 U.S. 607, 610–611 (1992). Under the FSIA, a "foreign state shall be immune from the jurisdiction of the courts" unless one of several statutory exceptions in 28 U.S.C. §§ 1605 to 1607 applies. 28 U.S.C. § 1604. The FSIA thus provides the "sole basis" for obtaining subject matter jurisdiction over a foreign sovereign in the United States. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). "Once the defendant presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with showing that, under the exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." *Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for A.W. Galadari et al.*, 12 F.3d 317, 325 (2d Cir. 1993) (internal quotation marks and citations omitted). Plaintiffs do not dispute that courts consider a mission to the United Nations a "foreign state" under the FSIA and thus Plaintiffs must show that an exception to sovereign immunity permits this Court to issue an injunction against the Mission. *See USAA*

*Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, No. 10 Civ. 4262 LTS, 2010 WL 4739945, at *2 (S.D.N.Y. Nov. 17, 2010) (quoting *Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Botswana to United Nations*, No. 05-2591, 2005 WL 1621342, at *2 (S.D.N.Y. July 12, 2005)).

### 1.    The "Commercial Activity Exception" Under 28 U.S.C. § 1605(a)(2) Applies Here

One exception to foreign state immunity under the FSIA is the "commercial activity" exception. Under this exception, a foreign state will not be immune from suit in federal court if "the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2). The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." *Id.* § 1603(d). A "commercial activity carried on in the United States by a foreign state" is defined as a "commercial activity carried on by such state and having substantial contact with the United States." *Id.* § 1603(e). In construing the commercial activity exception, courts have required that a significant nexus exist between the commercial activity in this country on which the exception is based and a plaintiff's cause of action. *NYSA-ILA Pension Tr. Fund By & Through Bowers v. Garuda Indonesia*, 7 F.3d 35, 38 (2d Cir. 1993) (citations omitted). A "foreign state" is engaged in "commercial activity" under the FSIA "when it acts not in its governmental or public role, but rather as a private player in the marketplace." *United States Fid. and Guar. Co. v. Braspetro Oil Services, Co.,* 199 F.3d 94, 98 (2d Cir. 1999) (per curiam). Plaintiffs' claims against the Mission stem from the Mission's actions in the United States. The only question is whether the Mission's role in renovating its Headquarters is a "commercial activity" under Section 1605(a)(2).

13

According to the FSIA's legislative history, Congress recognized this situation—the Mission contracting to renovate its Headquarters—as a commercial activity even though the Mission does not use its Headquarters for commercial activity. *See* H.R. REP. 94-1487, 16, 1976 U.S.C.C.A.N. 6604, 6615 ("As the definition indicates, the fact that goods or services to be procured through a contract are to be used for a public purpose is irrelevant; it is the essentially commercial nature of an activity or transaction that is critical. Thus, a contract by a foreign government to buy provisions or equipment for its armed forces or to construct a government building constitutes a commercial activity. **The same would be true of a contract to make repairs on an embassy building. Such contracts should be considered to be commercial contracts, even if their ultimate object is to further a public function.**") (emphasis added). The relevant inquiry is the act itself (renovation of the Headquarters through construction contracts), rather than its purpose (to improve the Headquarters use for diplomatic functions).

In *Napolitano v. Tishman Construction Corp.*, No. 96 CV 4402 (SJ), 1998 WL 102789 (E.D.N.Y. Feb. 26, 1998), a plaintiff construction worker sued Austria for personal injuries he suffered while working at a construction site owned by Austria. *Id.* at *1. Austria made a motion to dismiss arguing that it was immune from jurisdiction under the FSIA. *Id.* The court denied Austria's motion, holding that the action fell under the "commercial activity" exception to the FSIA. *Id.* at *3–4. The court found that Austria's construction contract with its general contractor for the construction of a new consulate building in New York City fell under the definition of "commercial activity." *Id.* at *4. The court also found that the worker's injury occurred during the construction, so there was a significant nexus between the commercial activity and the worker's cause of action. *Id.* Thus, the commercial activity exception applied and relieved Austria of immunity. *Id.*

Just as in *Napolitano*, the Mission hired contractors to perform renovations to its building. The Mission and its contractors—including the Empire Defendants (subcontractor)—owed Plaintiffs a duty to adhere to the Construction Code throughout renovations. At a minimum, the Mission breached those duties, and actually and proximately damaged the property of its next–door neighbor—Plaintiffs. Thus, the Mission's construction work falls under the definition of "commercial activity," and Plaintiffs' injuries have a sufficient nexus to, and depend on, Defendants' commercial activity. Given the commercial activities exception, the Mission is not entitled to immunity from this action.

### 2.      The "Immovable Property" Exception Under 28 U.S.C. § 1605(a)(4) Also Applies

Section 1605(a)(4) of the FSIA is equally sufficient to bring the Mission outside the ambit of the statute's protection. Under Section 1605(a)(4), a foreign state is not immune in a case in which "rights in immovable property situated in the United States are in issue." 28 U.S.C. § 1605(a)(4).

In *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 373-74 (2d Cir. 2006), the Second Circuit explained that, under this exception of the FSIA, the foreign state, "cannot assume the benefits of ownership . . . while simultaneously disclaiming the obligations associated with them." As a result, the foreign state, "must follow all the same laws that pertain to private owners of such property, except to the extent that it can point to specific exceptions in that country's agreements with the United States, treaties, or other sources of law." *Id.* at 374. The Supreme Court affirmed in *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 198–99 (2007), holding that an action seeking a declaration of the validity of tax liens against domestic real property owned by a foreign state invoked the "rights in immovable property" immunity exception. *Id.* The exception, the Supreme Court explained, "does

not expressly limit itself to cases in which the specific right at issue is title, ownership, or possession. . . . Rather, the exception focuses more broadly on 'rights in' property.'" *Id.* at 198. A lien runs with the land, is enforceable against later purchasers, and thus "inhibits one of the quintessential rights of property ownership – the right to convey." *Id.*  Accordingly, a tax lien fit into the "rights in [the] immovable property" exception. *Id.* at 198–99.

Just as New York City can enforce liens against foreign states, New York City can also enforce its Construction Code against a foreign state. First, this conclusion aligns with international law. Under the Vienna Convention on Consular Relations, ratified by the United States in 1969, and agreed to by Sierra Leone in 2016, a foreign state must "respect the laws and regulations of the receiving State." Vienna Convention on Consular Relations, Art. 55. Second, the enforcement of the Construction Code runs with the land, and later purchasers of the Mission's property also would have to obey the Construction Code requirements if they intended to work on the Party Wall.

A court may also consider the causes of action alleged to see if the immovable property exception applies. *See Pulaski v. Republic of India*, 212 F. Supp. 2d 653, 654 (S.D. Tex. 2002). In *Pulaski*, a Houston landowner sued his neighbor, the Republic of India, for trespass and nuisance when he discovered that surface water was being diverted from India's property through an eight-inch drain pipe that extended about twenty feet onto the landowner's land. *See id.*  India declined to remove the pipe. *See id.* The court held that the landowner could sue India under the immovable property exception because trespass and nuisance both were an "encroachment" on the landowner's land. *Id.* at 655. The court explained that a trespass is an "unwarranted presence, and the question of warrant depends on title, license, or other concept of property law." *Id.* India

trespassed by putting pipes on the landowner's land, and India created a nuisance by using the landowner's property as a natural runoff. *See id.* Thus, the landowner could sue India. *See id.*

Here, the Court should apply the same analysis. Defendants committed nuisance and trespass. As discussed above and in the FAC, Defendants' disastrous and unlawful renovations have—among other things—turned the Headquarters into a firetrap that threatens Plaintiffs' and the public's safety. (ECF No. 13, ¶¶ 16(b), 22–30.) These claims involve rights in immovable property and thus the Mission is properly subject to suit in this Court.

### 3.    The "Tortious Act" Exception Under 28 U.S.C. § 1605(a)(5) Likewise Applies

The tortious act exception provides jurisdiction over tort actions not encompassed in the commercial activity exception "in which money damages are sought against a foreign state for . . . damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state . . . ." 28 U.S.C. § 1605(a)(5). Plaintiffs' claims also fall within this exception because they seek monetary damages from the Mission, allege that the Mission has unlawfully encroached on their property, allege damage to the Plaintiff Home, and allege that the Mission caused the damage to the Plaintiff Home from its failure to protect the structural integrity of the Plaintiff Home by, among other things, weakening the Party Wall.

Indeed, in *USAA Casualty Insurance Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 109-110 (2d Cir. 2012), the Second Circuit held that Section 1605(a)(5) applied in identical circumstances—where the Namibian Mission was renovating its property and caused damage to the party wall. The court explained that the Mission's "failure to comply with a duty imposed by the Building Code is, at a minimum, evidence of negligence and can give rise to tort liability under New York law." As a result, the court had subject matter jurisdiction to hear the case. *Id.* Similarly, in *Pulaski*, the court held that India was subject to jurisdiction under this

17

exception. 212 F. Supp. 2d at 656. In that case, India contended that "since diplomatic car wrecks were a prime motivation for the tort exception, it should be limited to them." *Id.* The court rejected this rationale: "Legally and physically, trespass on a neighbor's land is more analogous to a car wreck than it is to the cases of reasons-of-state injuries." *Id.*

Plaintiffs allege that the Mission violated the Construction Code, trespassed onto their property, caused a nuisance, and were negligent. Plaintiffs also allege that the Mission's tortious conduct damaged their property. For this reason, the Court should also find that it has jurisdiction under the "tortious act" exception to the FSIA.

### 4.     The Doctrine of Inviolability Does Not Apply Here

The Court's subject matter jurisdiction here aligns with international law. Under the Vienna Convention on Consular Relations, ratified by the United States in November 1969, and agreed to by Sierra Leone on May 9, 2016, a foreign state must "respect the laws and regulations of the receiving State." Thus, the Mission must respect the Construction Code and comply with it. To be sure, Article 22 of the Vienna Convention is clear that the premises of a mission "shall be immune from search, requisition, attachment or execution." But that is not happening here, and Article 22 does not apply.

Rather, courts have found Article 22 of the Vienna Convention applies when "the premises of the foreign consulate are being violated by agents of the receiving states." *Napolitano*, WL 102789, at *6. In other words, Article 22 permits "suits in which rights in diplomatic property" are in issue so long as the suits do not "seek to oust a foreign sovereign from ownership or possession of the property." *City of New York v. Permanent Mission of India to United Nations*, 376 F. Supp. 2d 429, 439 (S.D.N.Y. 2005).

Plaintiffs are not seeking to violate the Mission's premises, much less oust Sierra Leone from the Mission. This is a civil suit by private plaintiffs who are seeking to recover for alleged

injuries to their property and prevent further damage. (*See, e.g.*, FAC ¶ 10 (seeking injunctive relief).)  Plaintiffs are not agents of the United States; Plaintiffs do not seek to invade the Mission's premises; Plaintiffs do not seek to oust Sierra Leone from ownership or possession of the Mission. Rather, Plaintiffs demand that the Mission comply with the same Building Code as all New Yorkers in doing renovations on its property. (*See* FAC ¶¶ 58–67.)  The FSIA does not preclude such injunctive relief. *See NML Capital, Ltd. v. Republic of Argentina,* 699 F.3d 246, 262, 263 (2d Cir. 2012) (explaining injunction against foreign state permissible and FSIA "impose[d] no limits on the equitable powers of a district court . . . where the district court's use of its equitable powers does not conflict with the separate execution immunities created by § 1609.").

By contrast, in *767 Third Avenue Associates v. Permanent Mission of Republic of Zaire to United Nations*, 988 F.2d 295 (2d Cir. 1993), the Second Circuit considered whether the inviolability of Zaire's Permanent Mission to the United Nations ("Zaire Mission") under international and United States law precluded the forcible eviction of the Zaire Mission. *Id.* at 298. The court held that such an eviction would not be proper, *id.* at 302–03, explaining that the Vienna Convention "recognized the independence and sovereignty of mission premises that existed under customary international law." *Id.* at 300. Thus, the court in *767 Third Ave.* precluded a private landlord's action for eviction—an action to oust the Zaire Mission from the premises. Again, no one is trying to evict the Mission here. Nowhere does Article 22 expressly or implicitly suggest that the Mission would be immune from a suit like this one, one when private citizens seek remediation for harm caused to their property through violations of the Building Code. This, the Vienna Convention does not shield the Mission from a civil suit by Plaintiffs.

**B.     Plaintiffs Can Satisfy Every Element for a Preliminary Injunction against the Fairfield Defendants**

**1.     Plaintiffs Will Likely Succeed on the Merits of their Claims against the Fairfield Defendants**

When a plaintiff can show a likelihood of success on the merits for a violation of a New York statute or regulation—including the Building Code—a court may issue an injunction. *See, e.g.*, *Short v. Manhattan Apartments, Inc.*, 916 F. Supp. 2d 375, 402-03 (S.D.N.Y. 2012) (granting injunctive relief after determining real estate brokers violated New York Human Rights laws and requiring real estate brokers to comply with New York Human Rights laws to prevent future violations); *Cangemi v. Yeager*, 185 A.D.3d 1397, 1399, 128 N.Y.S.3d 708 (2020) (establishing likelihood of success that plaintiff violated civil rights laws and issuing injunction); *accord 211-12 N. Blvd. Corp. v. LIC Contracting, Inc.*, 186 A.D. 3d 69, 81, 128 N.Y.S.3d 551 (2020) (granting summary judgment for plaintiff when defendants violated Building Code).

Plaintiffs will succeed on their negligence claims against the Fairfield Defendants because the Fairfield Defendants, as the entity who was awarded the contract for the Mission, owed a duty to Plaintiffs under the Construction and Building Codes and violated those duties. Because of Defendants' breach, Plaintiffs have been injured and will continue to be injured if the Fairfield Defendants do not comply with the law.[5]

---

[5] As this Court is aware, "[t]o warrant a preliminary injunction, Plaintiffs 'need not show that there is a likelihood of success on the merits of all of [their] claims for relief. Rather [Plaintiffs need to] show a likelihood of success on the merits of at least one of [their] claims.'" *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018) (quoting *Westchester Legal Servs., Inc. v. Westchester Cty.*, 607 F. Supp. 1379, 1382 (S.D.N.Y. 1985)). Plaintiffs will succeed on their other three claims against the Fairfield Defendants. In the interest of judicial economy, Plaintiffs only discuss the likelihood of success for their negligence claim here in this brief.

2.      **The Balance of Equities Heavily Favor Plaintiffs in their Claims against the Fairfield Defendants**

Aside from likelihood of success on the merits, the Court "must 'balance the equities' by 'explor[ing] the relative harms to applicant and respondent . . . ." *Hartford Courant Co., LLC*, 986 F.3d at 224 (quoting *Trump v. Int'l Refugee Assistance Project*, - - - U.S. - - - -, 137 S. Ct. 2080, 2089 (2017) (Thomas, J. concurring)); *accord A.H. by and through Hester v. French*, 985 F.3d 165, 184 (2d. Cir. 2021) (explaining how plaintiff's interests outweighed defendants to warrant injunction). Plaintiffs' livelihood and safety outweigh the Fairfield Defendants' interests in any contract with the Mission. Plaintiffs' lives will be in danger, and their quality of life severely damaged, until the disaster at the Headquarters is remedied.  Thus, this factor weighs in Plaintiffs' favor.

3.      **Issuing an Injunction against the Fairfield Defendants Serves the Public Interest**

Public safety and order and safeguarding private property are valid public interest considerations in issuing an injunction. *See New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 202 (2d Cir. 2001). Here, public safety and order are at risk because the Fairfield Defendants are overseeing the work of the Empire Defendants while managing an unsafe construction site and openly violating the Construction Code. An injunction against the Fairfield Defendants would serve public safety while safeguarding the Plaintiff Home.

**C.      Plaintiffs Renew their Request for a Preliminary Injunction against the Mission and Empire Defendants**

Plaintiffs will succeed on the merits against the Mission and the Empire Defendants; the balance of equities still weighs heavily in favor of Plaintiffs; and the preliminary injunction will serve the public interest.

**D.**    **Plaintiffs Will Suffer Irreparable Harm without an Injunction against All Defendants**

"[I]t is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute." *Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 435 (E.D.N.Y. 2011). Similarly, Plaintiffs have an unquantifiable interest in their family home. *See Carpenter Tech. Corp. v. City of Bridgeport*, 180 F.3d 93, 97 (2d Cir. 1999); *SK Greenwich LLC v. W-D Grp. (2006) LP*, No. 10 CIV. 7846 RRP, 2010 WL 4140445, at *3 (S.D.N.Y. Oct. 21, 2010); *Jones v. Park Front Apartments, LLC*, 73 A.D.3d 612, 613, 901 N.Y.S.2d 46 (2020).

Plaintiffs have suffered and will continue to suffer irreparable harm if the Court does not grant the preliminary injunction, as the last seven months have shown. As discussed above, there are at least three instances of Defendants' complete failure to protect Plaintiffs in their home during this period. First, a tarp the Empire Defendants had placed over the elevator shaft fell over the open elevator shaft, completely covering Plaintiffs' chimney and causing carbon monoxide to back up into Plaintiffs' home. The Mission learned of this and evidently did nothing. Second, in the early summer of 2021, the Empire Defendants placed plywood over the smoke vent on the Plaintiffs' roof, inhibiting the operation of a fire safety system by preventing a vent from opening that was necessary to protect fire egress from the building thereby threatening the life and safety of the Plaintiffs; luckily, Mr. Harvey discovered the life-threatening defect and removed the plywood immediately. Again, the Mission learned of this and did nothing. And since the Empire Defendants and Fairfield Defendants have insufficiently protected Plaintiffs' home from the winter weather, and the worst water intrusion into Plaintiffs' home occurs in the winter months due to

snow melting, it is particularly urgent for the Court to resolve these matters for Plaintiffs' safety. Again, the Mission is aware of this and has done nothing.

Simply put, Plaintiffs fear for their safety in their own home, a place where they have an unquantifiable interest. They fear that toxic gas may seep into the home because of Defendants' failure to properly conduct the renovations. Perhaps the Fire Department will not arrive in time or Mr. Harvey will not catch the next mistake by Defendants, which could be deadly to Plaintiffs. Or, they fear that water will intrude into the home again, causing more mold.  These fears are real given Defendants' conduct and the three examples cited above. Money damages cannot replace the safety, security, and peace of mind of living in the family home. Finally, Plaintiffs' harm is actual and imminent. Defendants have done nothing to protect the Plaintiff Home. Despite the Empire Defendants entering into the Order, with which the Mission is well aware, and despite repeated pleas by Plaintiffs, Defendants continue to do nothing. There is no reason to believe that Defendants will remedy the urgent problems at the site absent a preliminary injunction (and sanctions for contempt for the Empire Defendants as outlined above). Plaintiffs will continue to suffer irreparable harm without an injunction and their lives will remain in danger until the hazards at the Headquarters are fixed.

For all of these reasons, the Court should issue a preliminary injunction against all Defendants.

## <u>CONCLUSION</u>

Plaintiffs respectfully request that this Court grant their Motion for (1) Contempt against the Empire Defendants, (2) Sanctions against the Empire Defendants, and (3) a Preliminary Injunction against all Defendants.

Dated:  December 14, 2021

*/s/ Rachel Maimin*

Rachel Maimin
Ana Jara
Steven Fuerst
Andrew Dubin
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: 212.419.5876
Fax: 973.597.2400

*Counsel for Plaintiffs Janet and Joseph Harvey*

## **CERTIFICATE OF COMPLIANCE**

I do hereby certify that this Memorandum is in compliance with the Court's Local Rules and the Judge's Individual Rules.  The page count is 24.


Dated:  December 14, 2021                                     */s/ Rachel Maimin*_____
                                                                           Rachel Maimin

                                                                           *Attorney for Plaintiffs*
                                                                           *Janet and Joseph Harvey*